Filed 3/27/24  In re J.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re J.D., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E082457 |
| Plaintiff and Respondent, | (Super. Ct. No. J294113) |
| v. | OPINION |
| J.D., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Landon Villavaso, Deputy County Counsel, for Plaintiff and Respondent.

1

I.

INTRODUCTION

J.D. (Father) appeals the juvenile court's order terminating his parental rights to his son, J.D., and freeing him for adoption. Father's sole argument on appeal is that the juvenile court incorrectly found that the federal Indian Child Welfare Act (ICWA) and related California law did not apply. We affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND[1]

J.D. and his mother (who is not a party to this appeal) tested positive for cocaine when J.D. was born. San Bernardino County Children and Family Services (CFS) interviewed mother and Father and determined that J.D. was at a serious risk of harm. CFS therefore obtained a warrant to remove J.D. from the parents' care and filed a petition on his behalf under Welfare and Institutions Code section 300, subdivision (b)(1).[2] The juvenile court sustained the petition and ordered J.D. detained.

---

[1] We provide only a brief background of the proceedings given that Father only challenges the juvenile court's ICWA findings.

[2] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

Mother initially told CFS that she may have Indian ancestry, but she had no proof of it. Mother indicated that she may have Cherokee or "Blackfoot" ancestry. CFS could not conduct any further inquiry into mother's potential Indian ancestry because she was transient and could not be located or contacted for the rest of the dependency proceedings.

Father initially told CFS he may have Indian ancestry on his maternal side, but he could not identify any relatives to inquire about his potential Indian ancestry. Later, however, Father filed two forms with the juvenile court stating that he had no Indian ancestry. But when the juvenile court asked him about his Indian ancestry, Father stated that he may be part Cherokee, but was unaware of any other tribes. Father stated that his great-grandmother, C.D.—J.D.'s great-great-grandmother—might have had Indian ancestry. Father subsequently said he initially thought his grandmother—J.D.'s great-grandmother—might have had Indian ancestry, but then said that she did not. On two later occasions, Father again denied any Indian ancestry. Father did not know of any relatives who would have information about his possible Indian ancestry other than his older sister, M.S.

CFS asked Father's brother, M.D., about the family's Indian ancestry. He stated that his grandmother or great-grandmother—J.D.'s great-grandmother and great-great-grandmother—were "'full blooded Indian,'" but were deceased and he did not know their names, dates of birth, or the tribes they might have belonged to.

J.D.'s paternal adult sister, L.D., denied any Indian ancestry. She stated that her and L.D.'s paternal grandparents, A.D. and J.D., were deceased, and she did not know any other relatives who might have Indian ancestry.

M.S., Father's sister, and J.D.'s paternal aunt denied having Indian ancestry. She also reported that the paternal grandparents, A.D. and J.D., were deceased, and she did not know any other relatives who might have Indian heritage.

Based on its interviews with Father, M.D., L.D., and M.S., CFS concluded there were no additional paternal family members to interview about J.D.'s possible Indian ancestry. CFS also determined that the only potential tribal affiliations J.D. might have were with the Cherokee and Blackfeet tribes.

CFS therefore sent letters to (1) the Eastern Band of Cherokee Indians, (2) the Cherokee Nation, (3) the United Keetoowah Band of Cherokee Indians, (4) the Blackfeet Tribe of the Blackfeet Indian, and (5) the Bureau of Indian Affairs. The letters stated that CFS was "request[ing] an inquiry about relatives and [J.D.'s] tribal qualification with a Cherokee and/or Blackfeet Tribe." The letters included the names and dates of birth of (1) J.D., (2) Mother, (3) Father, (4) the paternal aunt, M.S., (5) the paternal uncle, M.D., (6) the paternal adult sister, L.D., (7) the paternal grandmother, J.D., and (8) the paternal grandfather, A.D. The letters did not identify or include any information about L.D.'s great-grandmother or great-great-grandmother.

Only the Eastern Band of Cherokee Indians and the Cherokee Nation responded. Both tribes stated that J.D. was not a member of their tribe and was not eligible to become one.

More than 60 days after CFS sent its inquiry letters, the juvenile court held an ICWA review hearing. At that hearing, the juvenile court found that CFS satisfied its duty of inquiry under section 224.2 and there was no reason to know J.D. is an Indian child. The court thus found that ICWA did not apply. (See § 224.2, subd. (i)(2); Cal. Rules of Court, rule 5.481(b)(3)(A).) Two days later, the juvenile court terminated Father's parental rights to J.D. under section 366.26 and freed J.D. for adoption. Father timely appealed.

III.

DISCUSSION

Father contends the juvenile court erred by finding that ICWA did not apply because CFS did not satisfy its duty of inquiry into J.D.'s Indian ancestry under section 224.2, subdivision (e) because CFS failed to gather "the information required in section 224.3, subdivision (a)(5)" and failed to share "all information necessary for each tribe to make a membership or eligibility determination." In particular, Father argues CFS's letters to the tribes were deficient because they did not identify J.D.'s great-grandmother or great-great-grandmother, C.D., and their dates of birth, and failed to state the "other names or address or places of birth or death for the family members listed in the [] letters." Father thus argues CFS and the juvenile court failed to ensure there was an

5

adequate "further inquiry" into J.D.'s possible Indian ancestry.  He asks us to remand the case and order CFS to "gather[] all information required under sections 224.2, subdivision (e)(2)(A), and 224.3, subdivision (a)(5), from all available extended family members, and communicat[e] all of this family information to the Cherokee, Blackfeet, and any other relevant tribes."

ICWA and California law implementing ICWA impose a duty on juvenile courts to determine whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).)  "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry."  (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678.)

The second phase "of further inquiry" is at issue here.  This duty is triggered when there is "reason to believe that an Indian child is involved" in the dependency proceedings.  (§ 224.2, subd. (e).)  "'[R]eason to believe' exists whenever the court or DPSS has 'information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.'  (§ 224.2, subd. (e)(1).)  The required further inquiry includes interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility.  (§ 224.2, subd. (e)(2)(A)-(C).)"  (*In re Ricky R.*, *supra*, 82 Cal.App.5th at p. 679.)  This duty is distinct from a formal ICWA notice required under

6

section 224.3, which requires a "'reason to know,'" as opposed to a "'reason to believe,'" that an Indian child is involved. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1049.) If the juvenile court finds "that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding" that ICWA does not apply. (§ 224.2, subd. (i)(2).)

The juvenile court here found that CFS had conducted a sufficient inquiry into whether J.D. has Indian ancestry, there was no reason to believe J.D. is an Indian child, and thus ICWA does not apply. In general, we review these findings for substantial evidence. (*In re N.F.* (2023) 95 Cal.App.5th 170, 178; see also *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004-1005 [adopting substantial evidence review of juvenile court finding that it had no reason to know child is an Indian child but abuse of discretion review of decision that ICWA inquiry was adequate].)

Substantial evidence supports the juvenile court's findings here. We first note that Father does not suggest CFS's inquiry into Mother's Indian ancestry was inadequate, so we need to focus only on its inquiry into his Indian ancestry. We also note that Father does not suggest there were other, additional family members CFS could have interviewed. The record instead shows that CFS interviewed every known paternal relative that had information about J.D.'s potential Indian ancestry, including Father, his brother, M.D., his sister, M.S., and his daughter/J.D.'s sister, L.D.

7

The information gleaned from these relatives was mixed. While M.S. and L.D. denied that the family had any Indian ancestry, M.D. thought that his grandmother or great-grandmother might have been "full blooded Indian," though he did not know their names, dates of birth, or the tribes they purportedly belonged to. Father initially suggested he had Cherokee or Blackfeet ancestry, but later denied having any on several occasions.

At best, this information from Father's relatives—again, his only known relatives that may have information about J.D.'s Indian ancestry—suggested that J.D. might have Cherokee or Blackfeet ancestry. Assuming without deciding that this provided "reason to believe" J.D. was an Indian child under section 224.2, the juvenile court reasonably found that CFS satisfied its duty of further inquiry.

After interviewing all known paternal relatives who had information about J.D.'s heritage, the only identified tribes that J.D. may be affiliated with are the Cherokee and Blackfeet tribes. CFS sent informal ICWA notices to three Cherokee tribes and the Blackfeet, as well as the BIA, and no one responded saying J.D. was Indian. Two Cherokee tribes responded saying that J.D. was not a member of the tribe and not eligible to become one. In our view, this evidence provided substantial evidence for the juvenile court to find that CFS had satisfied its duty of further inquiry.

8

Father disagrees because CFS's ICWA letters omitted information that he claims was critical to allow the tribes to conduct an adequate inquiry into J.D.'s potential tribal membership. This information included the names of J.D.'s great-grandmother (whose name appears to be unknown) and great-great-grandmother, C.D., and their dates of birth, the "other names or address or places of birth or death for the family members listed in the [] letters." Father argues CFS had a duty to gather all of this information letters under section 224.2, subdivision (e)(2)(A), which states that a social service agency conducting a further inquiry must gather the information outlined in section 224.3, subdivision (a)(5), and then contact the appropriate tribes and the Bureau of Indian Affairs consistent with section 224.2, subdivision (e)(2)(B) and (C).

Assuming without deciding that Father is correct, there was no prejudicial error here. To begin with, we are aware of no authority that holds CFS had to relay information about J.D.'s great-great-grandmother in its ICWA letters. Section 224.3, subdivision (a)(5) states that ICWA letters need identify "[a]ll names *known* of the Indian child's biological parents, grandparents, and great-grandparents," but says nothing about great-great-grandparents, such as C.D. (§ 224.3, subd. (a)(5)(C), italics added.) And although Father and M.D. suggested that J.D.'s great-grandmother might have had Indian ancestry, there is no evidence in the record that the family knew her name. In fact, M.D. told CFS he did not know her name, and Father does not suggest how CFS could have discovered her name.

More importantly, Father makes no attempt to explain how the omitted information in CFS's ICWA letters would have made a difference had it been included. In other words, he fails to show how its omission was prejudicial in any way. When CFS or the court fails to comply with its duty of inquiry under state law, we will find the error prejudicial and will conditionally reverse only if "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)

Even if CFS had a duty to identify J.D.'s great-grandmother (or great-great-grandmother) in its ICWA letters or had a duty to include the other omitted information about his family members, the error was harmless. CFS's ICWA letters stated the names and dates of birth of (1) J.D., (2) Mother, (3) Father, (4) the paternal aunt, M.S., (5) the paternal uncle, M.D., (6) the paternal adult sister, L.D., (7) the paternal grandmother, J.D., and (8) the paternal grandfather, A.D. We find it highly unlikely that the tribes might have uncovered evidence suggesting J.D. is an Indian child had the letters identified his great-grandmother and great-great-grandmother and included more information about the family members the letters did identify. This is particularly given that there is no evidence that his *paternal sister* has any Indian heritage and two tribes confirmed that she was not a member of the tribe and not eligible to become one.

In short, we conclude the juvenile court reasonably found that CFS satisfied its duty of inquiry. To the extent that CFS did not do so as assumed above, any error was harmless. We therefore affirm.

10

IV.

DISPOSITION

The juvenile court's orders terminating Father's parental rights to J.D. and freeing him for adoption are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

McKINSTER

Acting P. J.

FIELDS

J.